FILED
ASHEVILLE, N.C.

2004 NOV 16 PM 4:01

W. DIST. OF N.C.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:00-CR-00074-1
1:04CV251**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| RICHARD ALLEN JACKSON | ) |

## MOTION OF RICHARD ALLEN JACKSON TO VACATE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. §2255

Petitioner Richard Allen Jackson is a prisoner in the custody of the United States, under a sentence of death. He is housed at the United States Penitentiary, Terre Haute, Indiana. He was convicted and sentenced to death in violation of the Constitution and laws of the United States. According, Mr. Jackson moves this Court to vacate, set aside, or correct his conviction and sentence, pursuant to 28 U.S.C. §2255. In support of this motion, Mr. Jackson states the following.

### PROCEDURAL HISTORY

On 2 October 2000, Mr. Jackson was indicted for using a firearm in a national forest during which he allegedly kidnaped, sexually assaulted and killed Ms. Karen Styles. A superseding indictment was later filed on 6 November 2000.

On 19 October 2000, Stephen P. Lindsay was appointed to represent Mr. Jackson. On 26 October 2000, Eric J. Foster was appointed as co-counsel for Mr. Jackson. Mr. Foster withdrew as Mr. Jackson's counsel on 16 March 2001. David G. Belser was appointed to replace Mr. Foster and to represent Mr. Jackson on 23 March 2001.

Trial began on 30 April 2001. On 7 May 2001, the jury returned a verdict of guilty on all

charges. The sentencing hearing began on 8 May 2001. On 9 May 2001, the jury returned a verdict of death. On 14 May 2001, the Court entered judgment against Mr. Jackson, sentencing him to death.

On 13 June 2001, Mr. Jackson filed a timely notice of appeal. On 18 March, 2001, the United States Court of Appeals for the Fourth Circuit affirmed Mr. Jackson's conviction and sentence of death. *United States v. Jackson*, 327 F.3d 273 (4 Cir. 2003), *cert. denied*, 124 S.Ct. 566 (2003). The United States Supreme Court denied petition for a writ of certiorari on 17 November 2003.

On 23 October 2004, this Court granted Mr. Jackson's motion for appointment of counsel.

## FACTUAL BACKGROUND

On 31 October 1994, Karen Styles disappeared while jogging in the Bent Creek Recreation Area of the Pisgah National Forest in Buncombe County, North Carolina. A hunter later found her body in the woods on 25 November 1994.

After an investigation by law enforcement, police identified Mr. Jackson as a suspect. On 20 December 1994, Mr. Jackson voluntarily accompanied law enforcement to the Buncombe County Sheriff's Department. During the ensuing interrogation, Mr. Jackson made a statement regarding his involvement in the disappearance of Ms. Styles. At the conclusion of the interview, Mr. Jackson was arrested for murder.

Mr. Jackson was tried capitally for murder at the 6 November 1995 Criminal Session of the Superior Court for Buncombe County, North Carolina. He was convicted and sentenced to death.

The Supreme Court of North Carolina reversed his conviction and sentence of death, finding

2

that his confession should have been suppressed. *State v. Jackson*, 348 N.C. 52, 497 S.E.2d 409, *cert. denied*, 545 U.S. 943 (1998), *overruled in part, State v. Buchanan*, 353 N.S. 332, 543 S.E.2d 823 (2001). While facing capital retrial in state court, Mr. Jackson pled guilty on 3 March 2000 to second degree murder, first degree rape and second degree kidnaping. He was sentenced to a combined term of 300-379 months.

## STATEMENT OF THE CASE

Richard Jackson has a unique personal history, notable for a profoundly damaging early childhood and a complicated interplay between biological and environmental factors. His history includes being born to a 16-year-old mother with a history of mental illness, experiencing neglect and likely sexual abuse in infancy and early childhood, multiple foster placements in early childhood, serious social, academic and behavioral difficulties, unsuccessful efforts at intervention including psychotherapy, consistently failed interpersonal relationships since early childhood, numerous suicide attempts, hospital emergency room visits, and inpatient psychiatric treatment.

From the time Richard was a toddler, Richard was exhibiting numerous behaviors symptomatic of serious, life-long, brain-based disorders. His behaviors when nervous or anxious -- his overly loud voice, his repetitive speech, his temper tantrums, his trance-like state and his constant motion -- plagued Richard throughout his early life and separated him from his peers.

Moreover, although adopted into an intact middle-class family, the stability gained was attained too late to reverse the effects of his traumatic early childhood. There is clear and compelling evidence that the family Richard was born to was rife with severe mental dysfunction, including a well-documented history of mood disorders, autism spectrum disorders, and mental retardation. The significance of this family history for understanding the tragic direction of

3

Richard's own life, in spite of the efforts of his adoptive family, is undeniable, for it is beyond question that all of these conditions are well beyond his control.

Significantly, Richard's biological sister, who was adopted and raised by a different family, and her daughter, have exhibited an unusual and distinctive array of mood, anxiety and developmental disorder symptoms, many of which are also identifiable in Richard.

Nevertheless, at trial and at sentencing, the jury heard no evidence at all of Mr. Jackson's biological family and heard from only one witness in mitigation, Mr. Jackson's adoptive mother. While she cared deeply for her son and told the jury that she wanted his life to be spared, her testimony barely scratched the surface of some of these most critical areas of Richard's life and failed to provide any evidence about others, including his biological family history and his early years in foster care.

Richard, although different in speech and manner, and unsuccessful in virtually every domain of functioning, had no serious criminal history and no history of violence toward others. He struggled with his own limitations, as evidenced by his documented history of depression and suicide attempts. Despite these limitations, Richard was, in October 1994, employed and trying to raise two young children.

## CLAIMS FOR RELIEF[1]

I.      **RICHARD JACKSON RECEIVED PRESUMPTIVELY PREJUDICIAL ASSISTANCE OF COUNSEL UNDER THESE UNIQUE CIRCUMSTANCES BECAUSE COMPETENT COUNSEL COULD NOT RENDER ASSISTANCE.**

When a defense attorney "entirely fails to subject the prosecution's case to meaningful

---

[1]Counsel hereby asserts that all affidavits and non-record documents referenced herein will be submitted with Mr. Jackson's Response to the government's Answer.

4

# NOTE:

# THIS IS A PARTIALLY SCANNED DOCUMENT.

# PLEASE SEE THE CASE FILE FOR ATTACHMENTS, EXHIBITS, AFFIDAVITS OR OTHER MATERIAL WHICH HAS NOT BEEN SCANNED.