FILED
ASHEVILLE, N.C.
2004 DEC -6 PM 3: 56
W. DIST. OF N.C.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:04CV251
(1:00CR74)

RICHARD ALLEN JACKSON,       )
                             )
              Petitioner,    )
                             )
        vs.                  )
                             )
UNITED STATES OF AMERICA,    )
                             )
              Respondent.    )
_____)

## GOVERNMENT'S COMBINED OPPOSITION TO PETITIONER'S MOTION FOR RECORDS OF BUNCOMBE COUNTY DEPARTMENT OF SOCIAL SERVICES AND MOTION FOR LEAVE TO INTERVIEW JURORS

NOW COMES the United States of America, by and through Gretchen C.F. Shappert, United States Attorney for the Western District of North Carolina, and files this Combined Opposition to the Petitioner's Motion for Records of the Buncombe County Department of Social Services (hereinafter "DSS") and Motion for Leave to Interview Jurors, each of which was filed with the Court on November 16, 2004. For the reasons set forth below, the United States respectfully submits that the Court should deny each of these motions.

### I. Motion for Records of the Buncombe County DSS

Richard Allen Jackson (hereinafter "the petitioner" or "Jackson") has moved that the Court order the Buncombe County DSS to provide his counsel with all records maintained by the DSS concerning all persons who were foster parents for Jackson, specifically referring to four married

couples and two individuals who were his foster parents from 1970 through 1975.[1] As Jackson's motion notes, in 1995, the Superior Court ordered DSS to produce all of its records pertaining to him. These records were produced and were available to defense counsel both in the state and the federal prosecutions. Jackson's attorneys in his federal case mentioned in their opening statement, and included in their list of mitigating factors concerning punishment, that Jackson had been through numerous foster parents as a young child, with allegations that he had possibly been abused, and that he had emotional and psychological problems.

Now, Jackson apparently is seeking even more records than the voluminous quantity already produced, in hopes of determining whether DSS ever received complaints about any of these foster parents, or whether DSS ever investigated any of them for misconduct, at any time, concerning any child. Jackson seeks these records in hopes of finding *something* there that could then be bootstrapped into making an argument that trial counsel were ineffective and unconstitutionally deficient in their representation, by their failing to discover such evidence for purposes of possible mitigation evidence.

Prisoners collaterally attacking their federal convictions under 28 U.S.C. § 2255 are "not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). *See also, Rich v. Calderon*, 170 F.3d 1236, 1239 (9th Cir. Mar. 25, 1999) ("A habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant"), *amended and superseded*

---

[1] As an initial matter, the United States notes that the Certificate of Service accompanying this motion does not indicate that the Buncombe County DSS has been served with the motion. Since DSS would be an affected party should the Court grant the motion, the United States has notified legal counsel for DSS of this motion. That counsel has informed the undersigned that DSS will be filing an opposition to the motion. The United States therefore submits that the Court should allow DSS to respond before ruling on the motion.

*on other grounds*, 187 F.3d 1064 (9th Cir. Aug. 13, 1999); *Moseley v. French*, 6 F. Supp.2d 474, 478 (M.D.N.C. 1998) ("discovery in federal habeas corpus cases is and should be a rare instance, not a common one"). Instead, Rule 6(a) of the Rules Governing Section 2255 Proceedings provides: "A judge *may, for good cause*, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." (*Emphasis added*.) [2] Rule 6(a) thus imposes a "significant restriction" on the ability of habeas and Section 2255 petitioners to obtain discovery. *In re Pruett*, 133 F.3d 275, 281 (4th Cir. 1997).

As the Supreme Court stated in *Bracy*, discovery may be ordered under Rule 6(a) only upon a "good cause" showing, based on "specific allegations," that "show reason to believe" a Section 2255 petitioner "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-909 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Earlier this year, the Fourth Circuit discussed the *Bracy* standard. In *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), the petitioners had been convicted of multiple offenses in the Eastern District of Virginia and had been sentenced to death. They had been unsuccessful in their direct appeal, and then filed a Section 2255 petition. With one exception, the district court had denied their motions for discovery as part of the 2255 proceeding, holding that the Supreme Court had determined in *Harris v. Nelson*, 394 U.S. 286 (1969) and in *Bracy* that "good cause" for discovery exists when a habeas petition establishes a prima facie case for relief. *Roane*, 378 F.3d at 402-03.

---

[2] Rule 6 was amended effective December 1, 2004. Previously, the rule stated that a party "may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure . . . if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants him leave to do so, but not otherwise." As the Advisory Committee Notes point out, the change was stylistic only, and no substantive change was intended.

Case 1:00-cr-00074-MR    Document 231    Filed 12/06/04    Page 3 of 8

The Fourth Circuit affirmed, stating:

> The Defendants assert that the court, in ruling against them, improperly applied a stringent "prima facie" standard under *Harris*, instead of a more forgiving "good cause"standard authorized by *Bracy*. This contention is incorrect. In *Bracy*, the Court cited with approval the discovery standard in *Harris*, merely clarifying the definition of "good cause." *See Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) (observing that *Bracy* approved the *Harris* standard): *see also Murphy v. Johnson*, 205 F.3d 809, 812 (5th Cir. 2000) ("[T]he *Bracy* decision does not lower the grade for discovery in habeas cases, but rather it merely reasserts the standards of *Harris v. Nelson* . . . .").

*Id.* at 403. Here, Jackson's asserted "good cause" showings are speculative in nature and fall far short of the concrete and particularized showing that the Court found sufficient to justify discovery in *Bracy*.

Rule 6(a) does not "authorize fishing expeditions." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir.1996). As the discovery allowed under Rule 6 "was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence'" (*Rich v. Calderon*, 170 F.3d at 1239), habeas and Section 2255 petitioners "are not entitled to go through the government's files on a fishing expedition in hopes of finding some damaging evidence" (*Hall v. United States*, 30 F. Supp.2d 883, 899 (E.D. Va. 1998), appeal dismissed, 187 F.3d 632 (Table) (4th Cir. 1999)). *Accord*, *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997) ("Rule 6 does not, however, sanction fishing expeditions based on a petitioner's conclusory allegations"); *Hernandez v. Johnson*, 108 F.3d 554, 561 (5th Cir.1997); *Deputy v. Taylor*, 19 F.3d 1485, 1492-1493 (3rd Cir.1994).

Furthermore, "[a] habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d at 540. In that regard, "generalized statements about the possible existence of material do not constitute 'good cause'" to warrant discovery under Rule 6(a); rather, "a petitioner must produce

4

specific evidence that supports his claim that the requested material exists." *Green v. Artuz*, 990 F. Supp. 267, 271 (S.D.N.Y. 1998). Additionally, a petitioner seeking discovery must make a prima facie showing as to each component of his asserted legal claim.

The United States submits that the Court, by applying the above-outlined legal standards, should exercise its discretion by denying the discovery motion.

## II. Motion for Leave to Interview Jurors

The law is well-settled that "[r]equests to impeach jury verdicts by post-trial contact with jurors are disfavored." *United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988). Accordingly, Local Rule 47.2 prohibits the post-verdict questioning of any juror "except on leave of the presiding judge upon good cause shown."

Dissatisfied litigants are not entitled to engage in fishing expeditions in which former jurors are interviewed in the hope of uncovering some impropriety that might impeach the jurors' verdict. *See United States v. Acker*, 52 F.3d 509, 516 (4th Cir. 1995); *Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143, 150 (5th Cir. 1983); *United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983); *United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978). Rather, the law — reflective of Local Rule 47.2 's "good cause" standard — imposes a substantial threshold burden on litigants seeking to conduct post-verdict juror interviews, requiring them to present evidence showing that specific and non-speculative jury impropriety has occurred. *See, e.g., United States v. Walsh*, 75 F.3d 1, 7-8 (1st Cir. 1996); *Acker*, 52 F.3d at 516; *United States v. Cuthel*, 903 F.2d 1381, 1382 (11th Cir. 1990); *Gravely*, 840 F.2d at 1159; *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985); *Haeberle v. Texas Intern. Airline*, 739 F.2d 1019, 1021 (5th Cir. 1984); *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983); *United States v. Eagle*, 539 F.2d 1166, 1170-1171 (8th Cir. 1976).

5

The Fourth Circuit recently addressed this issue again in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004). As discussed previously, there also the petitioners had filed a Section 2255 petition alleging a multitude of supposed errors, misconduct, and constitutional violations. The district court had denied the defendants' motion for leave to interview jurors, finding that the defendants' juror misconduct claims were "so speculative as to be 'insufficient to survive summary dismissal, much less summary judgment.'" *Id.* at 404. The Fourth Circuit affirmed: "Before proceeding down the path of impeaching a jury verdict, a § 2255 movant must make a threshold showing of improper outside influence. In this instance, the [district] court did not abuse its discretion in finding that no such showing had been made." *Id.*

The showing made by Jackson is, if anything, even less substantial than the deficient showing made by the petitioners in *Roane*. Jackson's *entire* factual basis supporting his motion is that, because of the publicity surrounding the murder and subsequent legal proceedings, "[t]he circumstances of Mr. Jackson's case are replete with factors that increase the likelihood of a jury problem of constitutional dimension." Motion for Leave to Interview Jurors at 2.

Jackson has engaged in pure conjecture, devoid of any evidence of any juror misconduct or bias. By simply arguing that because there had been publicity about this case, this increases the "likelihood of a jury problem," he falls far short of the threshold showing of impropriety required to justify the post-verdict interrogation of jurors, either by questionnaire, interview, or deposition. In such circumstances, there is nothing to justify post-trial interrogation of the jurors about media exposure. See *United States v. Moon*, 718 F.2d at 1234 ("Moon's claim that some juror might have [read prejudicial newspaper accounts of the case in violation of instructions to the contrary] is a speculative argument insufficient to justify further inquiry"); *United States v. Davila*, 704 F.2d at

6

754 (speculation that jurors may have been influenced by news accounts of John Hinckley's acquittal insufficient to justify post-trial juror interviews).

This is all the more so given the facts of this case, where the prospective jurors were repeatedly questioned about their knowledge and memory of any prior publicity concerning this case (with most of them having only a vague memory, or none at all, of the previous press coverage), and where the Court consistently reminded them, from the voir dire through the conclusion of the penalty phase, to avoid reading or listening to anything about the case other than what was admitted as evidence in court.

In essence, Jackson's cited justifications for forcing the jurors in this case to submit to questioning would effectively eliminate the requirement of "good cause," because it would always be possible for a losing party to speculate that the jury might have been subjected to extraneous influences or motivated by undisclosed biases. Such an approach would — contrary to Fourth Circuit precedent and the purposes underlying Local Rule 47.2 — make post-trial juror interviews a favored, rather than a disfavored, procedure. Jackson's unsupported request for leave to interview the jurors should be summarily denied.

This the _6 14_ day of December, 2004.

GRETCHEN C. F. SHAPPERT
UNITED STATES ATTORNEY

RICHARD LEE EDWARDS
ASSISTANT UNITED STATES ATTORNEY

7

# CERTIFICATE OF SERVICE

I certify that I have this day served a copy of the above upon the defendant by preparing a copy of the same, together with a copy of this certificate of service, for mailing to the defendant. Upon the filing of this pleading and certificate with the Court, a "file stamped" copy of such documents will be placed in an envelope, with adequate postage thereon, in an official depository of the United States Postal Service addressed to:

> M. Gordon Widenhouse, Jr.
> Attorney at Law
> Rudolf Widenhouse & Fialko
> 312 West Franklin Street
> Chapel Hill, NC 27516
>
> Shelagh Rebecca Kenney
> Attorney at Law
> Center for Death Penalty Litigation, Inc.
> 201 West Main Street, Suite 301
> Durham, NC 27701

being the address of counsel of record for the defendant. In the event these documents are not served upon the defendant in the manner and on the date described herein, the United States will immediately notify the Court and the defendant of the factually correct method of service of these documents.

This the _10th_ day of December, 2004.

ALICIA W. SHELTON
Legal Assistant