# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL CASE NO. 1:04CV251
## [CRIMINAL CASE NO. 1:00CR74]

| | | |
|---|---|---|
| RICHARD ALLEN JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on numerous motions. On November 16, 2004, the

Petitioner filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255.

Included in the prayer for relief was a request for discovery and an evidentiary hearing as well as

a motion for leave to file amendments to the petition. On November 22, 2004, the undersigned

required the Government to respond to the request for leave to amend. On the same date that the

petition was filed, the Petitioner moved for leave to interview jurors and for an order requiring

the Buncombe County Department of Social Services to disclose certain records. On December

21, 2004, the Petitioner moved for funds at Government expense to retain certain experts. On

that same date, the undersigned received a letter from Petitioner's counsel requesting a

scheduling conference.

1

Case 1:00-cr-00074-MR    Document 235    Filed 01/31/05    Page 1 of 20

**The motion for leave to file amendments.**

The petition, which is 187 pages in length, asserts the following errors which the Petitioner claims entitles him to vacatur of his conviction and sentence of death: (1) ineffective assistance of counsel due to the inexperience of one of the attorneys initially appointed to represent him; (2) ineffective assistance of counsel because the attorney subsequently appointed to replace that attorney was not provided sufficient time to prepare for trial; (3) ineffective assistance of counsel because trial counsel conceded, without permission, during opening arguments that the Petitioner was guilty; (4) ineffective assistance of counsel due to lack of pre-trial investigation; (5) ineffective assistance of counsel due to a failure to attack as inadequate the police investigation of the crime; (6) ineffective assistance of counsel because counsel failed to encourage the Petitioner to plead guilty to a sentence of life imprisonment; (7) ineffective assistance of counsel by failing to properly investigate the scientific basis for expert testimony concerning stun guns and to secure an expert in this area for the defense; (8) ineffective assistance of counsel because during the trial, counsel failed to state a ground for his objection to the expert testimony of the Government's witness concerning stun guns;[1] (9) ineffective assistance of counsel by failing to request a hearing on the issue of an expert concerning stun guns; (10) ineffective assistance of counsel because counsel failed to seek a continuance of the trial; (11) ineffective assistance of counsel because the Petitioner's confession was introduced by defense counsel without the Petitioner's permission; (12) ineffective assistance of counsel

---

[1]It should be noted that it is the custom in this Court that counsel do not state the grounds for their objections on the record during trial. The Petitioner's trial attorneys, who regularly appear before the undersigned, were well aware of this custom. As a result, the Court will not further consider this as a ground for ineffective assistance.

2

because counsel conceded the Petitioner's guilt a second time during closing arguments; (13) ineffective assistance of counsel by failing to marshal and present mitigation evidence; (14) ineffective assistance of counsel because had counsel properly investigated mitigation evidence and presented it to the mental health experts for the defense, those experts would have recommended the retention of additional experts in the fields of developmental disorders, genetics and pharmacology; (15) ineffective assistance of counsel because trial counsel failed to offer evidence of the Petitioner's biological sister's mental and emotional conditions; (16) ineffective assistance of counsel by failing to conduct adequate interviews with the only mitigation witness presented; (17) ineffective assistance of counsel by failing to rebut the videotape recording of an interview given by the Petitioner in prison; (18) ineffective assistance of counsel by failing to focus on positive statements made by the Petitioner in that videotape recording; (19) ineffective assistance of counsel by failing to present evidence that no DNA evidence linked the Petitioner to the crime; (20) ineffective assistance of counsel by failing to present evidence that there was no ballistic evidence which linked the Petitioner to the crime; (21) ineffective assistance of counsel by failing to present evidence that a cigarette pack was found at the crime scene although the Petitioner did not smoke; (22) ineffective assistance of counsel by failing to present evidence that the Petitioner had adjusted to prison life and posed no danger to the prison community;[2] (23) ineffective assistance of counsel by failing to explain the

---

[2]This ground is summarily dismissed. All twelve jurors found that the Petitioner had "been in prison for 7 years for the murder, kidnaping and sexual assault of Karen Styles. During that time there is no evidence that he has ever broken any prison rule, misbehaved in any way, or attempted to escape. **Special Verdict Form Regarding the Punishment to be Imposed on the Defendant Richard Allen Jackson, filed May 9, 2001, at 8.** The fact that the jury did not find that imprisonment for life without the possibility of release would render him not a danger in the future does not mean that trial counsel failed to present evidence on the issue. It simply means

3

Petitioner's illusions of grandeur and inappropriate affect; (24) the prosecution knowingly presented false evidence to the jury during the penalty phase during closing arguments; (25) ineffective assistance of counsel because instead of attacking the Petitioner's guilty plea in state court, counsel sought in this Court to exclude any evidence of that guilty plea; (26) ineffective assistance of counsel by failing to present expert mental health testimony during the penalty phase of the trial; (27) ineffective assistance of counsel by failing to present evidence of the Petitioner's relationship with his children and the impact on them of a death sentence;[3] (28) ineffective assistance of counsel because counsel argued during closing arguments in the penalty phase that justice demanded a sentence of death; (29) ineffective assistance of counsel because counsel failed to timely move for a mistrial after the testimony of Robert Sartori; (30) the prosecutor knowingly presented the false testimony of Robert Sartori; (31) the federal death penalty statute is unconstitutional in light of *Ring v. Arizona*, 122 S.Ct. 2428 (2002), because a defendant's age, mental intent and one statutory aggravating factor are not included in the indictment and found by a grand jury but instead are included in a death notice; (32) the federal death penalty statute is unconstitutional because aggravating factors need not be proven beyond a reasonable doubt by reliable evidence; (33) the trial was constitutionally invalid because it was not trifurcated into fact, mental intent and penalty phases; (34) the prosecutor made improper

---

that the jury did not find the evidence persuasive on the issue.

[3]The Court summarily dismisses this ground. Twelve of the jurors found as a mitigating factor that the Petitioner "has a son and a daughter - Richard Jackson, Jr., 'Little Ricky,' and Shelby Mae Jackson." **Special Verdict Form Regarding the Punishment to be Imposed on the Defendant Richard Allen Jackson, filed May 9, 2001, at 8.** Eleven of those jurors found that the execution of the Petition will "have a severe impact on his mother and family and his two young children." **Id.**

4

statements during closing arguments; (35) the Petitioner was denied the right to confrontation because he was not present during the jury view of the crime scene; (36) the Court provided testimony and bolstered other testimony during the jury view; (37) ineffective assistance of counsel by failing to move to strike the death notice as untimely; (38) the Petitioner did not receive all exculpatory evidence; (39) the Petitioner's constitutional rights may have been violated by juror misconduct; (40) the Petitioner's constitutional right against double jeopardy was violated; (41) death by lethal injection constitutes cruel and unusual punishment; (42) death in the case of this Petitioner, who suffers from an emotional and mental illness, is cruel and unusual punishment; (43) the imposition of the death penalty violated the Fifth and Eighth Amendments of the Constitution because statistics show that a defendant who kills a Caucasian woman is more likely to receive the death penalty; (44) all grounds raised on direct appeal are renewed in this motion; and (45) the cumulative impact of all the above-stated errors deprived the Petitioner of his constitutional rights.

The Petitioner requested "a sufficient period of time within which to file [any] such amendments to this Motion as might be necessary to bring all proper matters to include any additional claims or allegations not presently known to him or his counsel, which are identified or uncovered in the course of discovery, investigation, and litigation of this motion, and, to allow the amendment to relate back to the date of the filing of this motion[.]" **Motion, filed November 16, 2004 at 187.** The Government objects, citing *United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000), in which the Fourth Circuit held that an amendment to a motion pursuant to §2255 will relate back to the original filing pursuant to Federal Rule of Civil Procedure 15(c) when the "'the claim or defense asserted in the amended pleading ar[i]se[s] out of the conduct, transaction, or

5

occurrence set forth ... in the original pleading.'" **Id., at 317.** *Pittman*, however, was not a death

penalty case. **United States v. Zuno-Arce, 25 F.Supp.2d 1087, 1095 n.6 (C.D.Cal. 1998)**

**("[T]his is not a capital case and §2266(b)(3)(B) is inapplicable.").**

Congress has enacted special procedures for collateral review in capital cases.[4] **28 U.S.C.**

**§§2261, *et. seq.***

> The adjudication of any ... motion under section 2255 by a person under sentence of
> death, shall be given priority by the district court ... over all noncapital matters.
>
> A district court shall render a final determination and enter a final judgment on any [such
> motion] in a capital case not later than 180 days after the date on which the application is
> filed.
>
> *A district court shall afford the parties at least 120 days in which to complete all actions,
> including the preparation of all pleadings and briefs*, and if necessary, a hearing, prior to
> the submission of the case for decision.
>
> ...
>
> *No amendment to an application for a writ of habeas corpus under this chapter shall be
> permitted after the filing of the answer to the application*[.]

**28 U.S.C. §2266(a), (b)(1) (emphasis provided).**

The provision concerning amendments specifically encompasses the Federal Rules of Civil

Procedure which are made applicable to §2255 motions by Rule 12 of the Rules Governing

Section 2255 Proceedings for the United States District Courts. "A party may amend the party's

pleading once as a matter of course at any time before a responsive pleading is served[.]

---

[4]The Court realizes that in state habeas proceedings, these provisions do not apply unless
the state has "opted in" to this statutory framework. However, as applied to federal defendants
who have been convicted and sentenced to death, it appears the framework applies both by
statute and Fourth Circuit edict. **Allen v. Lee, 366 F.3d 319, 353 n. (4th Cir. 2004) quoting
Truesdale v. Moore, 142 F.3d 749, 758 (4th Cir. 1998) ("Order No. 113 imposes on district
courts and the circuit court a timetable for deciding petitions brought under 28 U.S.C.
§2254 *and 2255* by defendants who are under sentence of death.").** Out of an abundance of
caution and in the absence of any waiver by the Petitioner, the Court will abide by the statute.

Otherwise, a party may amend the party's pleading only by leave of court." **Fed.R.Civ.P. 15(a).**

The dispute in this case is not whether the Petitioner may amend his motion pursuant to §2255 but whether such an amendment would relate back to the date the motion was originally filed; *i.e.*, November 16, 2004. Federal Rule of Civil Procedure 15(c) provides that an amendment will relate back to the date of the original pleading when "relation back is permitted by the law that provides the statute of limitations applicable to the action[.]" It is at least arguable that §2266 is such a statute. However, the Court does not find it necessary to reach this issue at this time.

It is inconceivable to the undersigned, as the Court which presided over that trial, that counsel have failed to raise any issue which possibly could have been raised in connection with the trial and appeal of the Petitioner's case. The motion as filed is exhaustively thorough and complete in the 45 grounds raised. Thus, while the Court will not limit the right of counsel to amend the petition prior to the Government's response, a final determination as to the relation back of any amendment cannot be rendered until the actual amendment is made. Petitioner's counsel are cautioned, however, that the Court finds the petition as filed has exhaustively stated all grounds for relief and no amendment should be made which is not in good faith and not frivolous.

**The motion for discovery.**

Rule 6 of the Rules Governing Section 2255 Proceedings provides that leave of court is required for discovery in motions pursuant to §2255 and such leave shall be granted "to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to

7

do so, but not otherwise." In addition to the general request for discovery, there are two additional motions for discovery, the motion for leave to interview the trial jurors and the motion for discovery of records from the Buncombe County Department of Social Services.

In order to obtain discovery in connection with a §2255 motion, the Petitioner must make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation and show good cause for the discovery. *United States v. Roane*, **378 F.3d 382, 403 (4th Cir. 2004), citing *Harris v. Nelson*, 394 U.S. 286, 290 (1969).** Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Id.*, **quoting *Bracy v. Gramley*, 520 U.S. 899, 908-08 (1997).** Thus, as to the general request for discovery, because no specific allegations have been made which would show an entitlement to relief, the request is denied.

Petitioner has moved for an order requiring the Buncombe County Department of Social Services to turn over to counsel all records involving the individuals who acted as foster parents for the Petitioner during his childhood and prior to his adoption. Counsel acknowledges that the Department was previously required to turn over all records relating to the Petitioner concerning those foster parents. However, counsel also seek records concerning these foster parents in connection with children other than the Petitioner who were fostered by these individuals. This request is made to ascertain whether there were any complaints filed or investigations made as to these parents, not in connection with their fostering of the Petitioner, but in connection with any child they may have fostered. Moreover, no time period is specified.

"Conclusional allegations are insufficient to warrant discovery; the petitioner must set

8

forth specific allegations of fact." *United States v. Webster*, **392 F.3d 787, 801-02 (5th Cir. 2004).** The request here is nothing more than a "fishing expedition" which the undersigned will not sanction. *Id.*, **at 802.** In fact, this request "reflects a desire to use the habeas corpus discovery mechanism to explore [the Petitioner's] case 'in search of its existence.'" *Id.*

> Petitioner also seeks leave to interview the jurors because
>
> [t]he circumstances of Mr. Jackson's case are replete with factors that increase the likelihood of a jury problem of constitutional dimension. Public attention to this case was enormous and extended over a period of many years. Publicity accompanied the discovery of Ms. Styles' body, the arrest of Mr. Jackson, and every subsequent event relating to his three trial proceedings (and initial successful appeal) concerning his responsibility for the murder of Ms. Styles.

**Motion for Leave to Interview Jurors, filed November 16, 2004 at 2.**

Again, this reflects nothing more than a desire to engage in a "fishing expedition" in the hopes of uncovering some issue. There is no allegation that any juror was, in fact, exposed to extraneous information or publicity. The conclusory claim of the possibility of some undefined problem is "so speculative as to be 'insufficient to survive summary dismissal[.]'" *Roane*, **378 F.3d at 404.**

> Throughout the trial, the [undersigned] gave cautionary instructions to the jury concerning both media coverage and other possible outside influences, repeatedly reminding the jurors to avoid such external sources of information. [Petitioner has] provided [the Court] with nothing to suggest that the jurors violated these instructions. "[R]equests to impeach jury verdicts by post-trial contact with jurors are disfavored." Before proceeding down the path of impeaching a jury verdict, a §2255 movant must make a threshold showing of improper outside influence. In this instance, ... no such showing has been made. Put simply, [Petitioner has] failed to proffer any evidence that the jurors engaged in misconduct or that they were improperly exposed to outside influences.

*Id.*

The requests for discovery are therefore denied.

9

**The request for an evidentiary hearing.**

The same standard as applied to discovery refutes the necessity of a hearing in this case. "A federal habeas court must allow ... an evidentiary hearing *only* where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief." ***Webster, supra.* (emphasis provided).** The Court is currently of the opinion that an evidentiary hearing is not only unnecessary but would be a waste of judicial resources. However, in the event that further pleadings convince the Court that such a hearing is warranted, one will be held.

**The request for the appointments of additional experts.**

21 U.S.C. §848(q)(4)(B) provides that a Court may appoint investigative and expert services for a Petitioner who has filed a motion pursuant to §2255 upon a finding that such services are "reasonably necessary." The Fourth Circuit has found that such services are not "reasonably necessary" unless the evidence forecasted by the experts would require an evidentiary hearing to resolve the claims. ***Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir. 1993).** This comports with the Fifth Circuit's requirement that investigative or expert services are not "reasonably necessary" unless they can be tied to a viable habeas claim of constitutional proportions. ***Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997).**

Petitioner seeks the appointment of Dr. Joseph Dyro, "a recognized expert in biological engineering" to support his claim that counsel were ineffective by failing to deal with the evidence offered by the Government concerning stun guns, specifically the testimony of Dr. Robert Stratbucker. According to Petitioner's counsel, Dr. Dyro "does not believe there is a scientific basis for Dr. Stratbrucker's opinions and does not believe the relevant scientific

10

Case 1:00-cr-00074-MR    Document 235    Filed 01/31/05    Page 10 of 20

community supports Dr. Stratbucker's approach, methodology and conclusions." **Motion for Funds for Expert Assistance, filed December 21, 2004, at 5.** Although not stated in the motion, apparently this information would be used to support the Petitioner's claim, in the §2255 motion, that trial counsel were ineffective for failing to offer rebuttal expert testimony regarding stun guns at trial.

In the motion, Petitioner acknowledges that trial counsel located such an expert but apparently rejected his qualifications. Ineffectiveness is alleged to have occurred because counsel failed to develop strategies to deal with Dr. Stratbucker's anticipated testimony. Yet, it is further alleged in the petition that trial counsel requested the issuance of a subpoena for Dr. Joe Hurt, described as

> a Forensic Pathologist who testified at Mr. Jackson's state court trial. Dr. Hurt will provide testimony with regard to the alleged "stun gun" markings on the body of Karen Styles. Dr. Hurt is expected to render an opinion that the marks observed were not caused by a stun gun and/or that the information available is insufficient to render that conclusion.
>
> ...
>
> Although the district court's refusal to allow a subpoena of Dr. Hurt was plainly erroneous and an abuse of discretion, defense counsel never revisited the issue or proffered Dr. Hurt's testimony.[5]

**Motion of Richard Allen Jackson to Vacate Conviction and Sentence pursuant to 28 U.S.C. §2255, filed November 16, 2004, at 18.**

---

[5]Attorneys who regularly practice before the undersigned, as did trial counsel here, would be well aware that the undersigned does not lightly countenance renewed and repeated requests for relief that has been denied. By the same token, counsel also chastise trial counsel for failing to state the ground for objection to the testimony of Dr. Stratbucker. **Motion, supra., at 20.** As previously noted, attorneys who regularly practice in this Court are aware that they are not to state the grounds for an objection, ask for a sidebar or request a hearing on evidentiary matters absent extraordinary circumstances not present in this particular situation.

11

Apparently, counsel now seeks the appointment of an expert witness to testify that Dr. Stratbucker's testimony did not meet the standards set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), despite alleging that trial counsel's failure to call Dr. Hurt as a rebuttal expert was erroneous conduct on the part of the undersigned. If the fault lay with the trial court's ruling, trial counsel can hardly be deemed ineffective.

Moreover, this request for an expert to prove that Dr. Stratbucker was not in actuality a true expert, overlooks the ruling of the Fourth Circuit in this case.

> Jackson next contends that the district court erred in admitting the expert testimony of Dr. Robert Stratbucker, which Jackson maintains was unreliable. Stratbucker testified, *over objection*, that there were multiple stun-gun marks on Styles' body, the majority of which were near her public area. The court concluded that Stratbucker's testimony was supported by his expertise in physiology and stun gun marks. Jackson contends that the district court did not adequately perform its gatekeeping function and inquire into the basis of Dr. Stratbucker's expert scientific testimony on stun-gun marks before permitting him to testify, as required by *Daubert*[.] We reject this argument.
>
> The district court required the government to lay a foundation for Dr. Stratbucker's testimony by eliciting his qualifications and previous research on the effects of stun guns on the human body. In a written order explaining the reasons for admitting Dr. Stratbucker's testimony, the district court applied Federal Rule of Evidence 702 and the applicable Supreme Court decisions, appropriately describing the requirements of that rule. *We are satisfied that the district court did not abuse its discretion in admitting Dr. Stratbucker's testimony.*

**United States v. Jackson, 327 F.3d 273, 298 (4th Cir. 2003) (emphasis provided).**

"[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in §2255 motions." **Webster, 392 F.3d at 791 n.5; Roane, 378 F.3d at 396 n.7.** Since the Fourth Circuit has concluded that Dr. Stratbucker's testimony was proper under *Daubert*, the testimony of an expert to explain in what manner his expert opinion was erroneous is not "reasonably necessary." **Fuller, supra. (the claim itself would be futile); Clark v.**

12

***Johnson***, 202 F.3d 760, 768 (5th Cir. 2000) (affirming denial of expert assistance because claim for which expert services were sought would have been futile in view of strength of state's case).

Next, Petitioner seeks the appointment as an expert of Dr. Donald Rosenblitt, "a recognized expert in early childhood development[.]" **Motion, *supra*., at 4.** "Dr. Rosenblitt believes that [the significant deprivations experienced during Petitioner's first five and one-half years were] a contributing cause to Jackson's behavior later in life." ***Id*., at 5.** Trial counsel, it is alleged, failed to identify this issue and thus, the assistance of this expert is necessary. In support of this claim, Petitioner notes that no juror found as mitigating factors that he was in eight different foster homes, physically abused and never had the unconditional love of a mother or father or that so much emotional damage was done that his adoptive parents could not repair it.

Contrary to Petitioner's claims, there were actually several mental health experts appointed by the undersigned who had the expertise to testify as to early childhood development and the impact of the Petitioner's young life as mitigation evidence. Dr. Seymour Halleck, an expert in forensic psychiatry, and Pam Laughon, Ph.D., clinical psychologist, were appointed on December 28, 2000; Mark Cunningham, Ph.D., forensic and clinical psychologist, was appointed on March 15, 2001; and Claudia Coleman, Ph.D., forensic and neuropsychologist, was appointed on April 6, 2001. Indeed, in the §2255 motion, Petitioner claims that Ms. Laughon "believed that she had found in Richard's case some of the most compelling mitigation she had ever had in a case."[6] **Motion, *supra*., at 49.** Petitioner has failed to show the necessity for yet

---

[6]Petitioner takes the opportunity in a footnote to berate the low fee awarded to Ms. Laughon, a sum which was "woefully inadequate compared to other federal capital cases tried in 2001." **Motion, supra., at n.6.** The amount of this fee, however, was set by the undersigned

13

another expert opinion. His real claim is that the mitigation evidence found by the experts who were appointed for the guilt and penalty phases of the trail was not presented. That is not grounds for the appointment of another expert.

Moreover, contrary to the claim that defense counsel presented no such evidence, the Fourth Circuit noted that the Petitioner's mother

> testified about Richard Jackson's childhood, his adolescence, his education, his work experience, his problems and failures, his marriage, and his activities in the month preceding the murder of Karen Styles and in the several months thereafter. She explained that she and her husband adopted Richard when he was five-and-a-half years old and that they were struck immediately by his abnormal behavior and his use of inappropriate language. She testified that by the time Richard was six or seven, he was caught several times masturbating. [She] testified that, beginning when Richard was 13 or 14 years old, he would often become depressed, and he tried to kill himself several times by overdosing on over-the-counter medications. When he overdosed, Sally Jackson stated that she would have discussions with Richard, and Richard was "always sorry that he did it, but always promised he would never do it again."

*Jackson*, 327 F.3d at 291.

Next, Petitioner seeks the appointment of an expert in autism, Dr. Lee Marcus, who has "indicated" to counsel that "he will be able to formulate an opinion regarding Jackson's severe developmental conditions and their effect on his behavior." **Motion, *supra.*, at 6.** In support of this request, counsel notes that "[f]ive of the twelve jurors did not find as a mitigating circumstance that Jackson would go into strange episodes during which he would become rigid, with his eyes blank and body shaking, and that these episodes did not lessen as he grew older." *Id.*, at 7. The fact is that seven of the twelve jurors *did* find this as a mitigating factor. Petitioner has not stated in what manner a diagnosis of autism would have impacted his defense. Again,

---

and trial counsel cannot be found at fault for the fee award. Moreover, as noted, the amount of the fee apparently had no impact on the mitigation evidence found by Ms. Laughon since it was "some of the most compelling mitigation she had ever had in a case."

14

the only allegations are conclusory, speculative and vague.

Finally, Petitioner seeks the re-appointment of Ms. Coleman and Dr. Halleck. Ms. Coleman, counsel explains, "is in a position to provide expert opinion regarding the biological and genetic linkage between Jackson and his [biological] sister" which would provide "the foundation required for the admission of important mitigating evidence." **Motion,** *supra.***, at 7-8.** Dr. Halleck, it is alleged, is "poised to provide expert opinion regarding the ineffectiveness of trial counsel in failing to present any expert testimony regarding Jackson's psychiatric and emotional condition at the time of the crimes." *Id.* The Fourth Circuit spoke to this issue.

> In connection with the sentencing phase of the trial, Jackson contends the district court erred in excluding the testimony of the adoptive parents of his biological sister. These witnesses would have testified that Jackson's sister demonstrated many abnormal behaviors. Jackson hoped to establish that because his biological sister manifested abnormal behaviors, the conclusion could be reached that he too would be expected to manifest the same behaviors.

> The district court ruled that absent a proffer of expert testimony that would permit a factfinder to draw the conclusion connecting the sister's mental condition with Jackson's, Jackson could not present the evidence. Jackson's counsel had previously consulted with a psychiatrist who opined that the "significantly similar progression" of Jackson and his sister suggested a biological connection. But when the time came for presenting expert testimony, Jackson did not offer any. As a consequence, the court did not permit the adoptive parents of Jackson's sister to testify about *the sister's* behavioral abnormalities.

> During sentencing in a capital case, the factfinder may "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." "Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" While Jackson must be able to present any evidence of *his* character or record, or the circumstances of the offense, to urge a penalty less than death, this does not entitle him to reach more broadly to matters unrelated. The district court imposed the condition on Jackson of demonstrating that testimony about his biological sister's mental health would permit conclusions to be drawn regarding the status of Jackson's mental health. Because of Jackson's failure to provide the linkage, the district court, we conclude did not abuse

15

its discretion.

***Jackson*, 327 F.3d at 299 (emphasis in original).**

Petitioner has still failed to explain in what manner his sister's problems provide a "link" to his own difficulties. Apparently, the Petitioner seeks to establish evidence of his own mental and emotional health not through the experts who examined him but through evidence related to his biological sister.

At the trial, defense counsel filed notice pursuant to Federal Rule of Criminal Procedure 12.2 that they intended to offer expert evidence relating to a mental disease or defect during the sentencing phase as well as during the guilt phase. As a result, the Petitioner was examined by Dr. Park Dietz, the Government's expert witness. As the record clearly shows, Dr. Dietz's report was sealed and not disclosed to the Government until such time as the Petitioner confirmed his intent to offer such evidence. Defense counsel determined as a tactical matter that it was more beneficial to the Petitioner *not* to confirm such an intent because the result would have been the introduction of Dr. Dietz's expert opinion into evidence during the sentencing phase of the trial. As a strategical ploy to avoid the direct introduction of the Petitioner's mental disease or defect, trial counsel cleverly attempted to place the same evidence before the jury through evidence of his sister's mental disease or defect. The fact that the undersigned found such evidence inadmissible does not change the issue: it is the Petitioner's mental disease or defect which was at issue, not that of his sister. Assuming *arguendo* that expert evidence would show a biological link between the two individuals, there would still be a requirement that evidence be shown of the Petitioner's mental state, not that of his sister. To argue that trial counsel were ineffective for failing to make that link is too speculative to warrant further expert appointments. The fact is

16

that counsel were faced with an exceedingly difficult dilemma and mounted a vigorous and creative effort to prove the issue without subjecting the Petitioner to the introduction of Dr. Dietz's opinion. The Court does not find that further expert opinion on the issue is necessary or likely to lead to proof of any constitutional deprivation.

**The request for a scheduling meeting.**

The request for a scheduling meeting to establish deadlines is rendered moot in light of the rulings herein.

**The disposition of the petition.**

The Court finds, for the reasons stated herein, that a thirty day extension beyond the current deadline for disposition of this motion is warranted. Without the extension, a decision would be required on or before May 16, 2005, in the absence of a waiver by the Petitioner. The Court finds that the extension will allow the Petitioner additional time to obtain any affidavits or other evidence in support of the petition and provide the Government with an opportunity to respond. Without the extension, both parties would be deprived of the reasonable time to brief the issues raised in the voluminous motion, taking into the account the exercise of due diligence. Thus, a failure to provide an extension would result in a miscarriage of justice. The Court also finds the ends of justice so served outweigh the best interests of the public and the Petitioner in a speedy disposition of this motion.

17

# ORDER

**IT IS, THEREFORE, ORDERED** that the disposition of this matter is hereby **EXTENDED** for a thirty day period beyond May 16, 2005, the date which is 180 days after the date on which the application was filed.

**IT IS FURTHER ORDERED** that on or before March 17, 2005, the Petitioner shall file any additional affidavits or pleadings for consideration in this matter. Petitioner is cautioned that such matters should not be merely reiterations of factual and legal arguments already presented in the motion.

**IT IS FURTHER ORDERED** that the Government's response to any such filings and to the original motion pursuant to 28 U.S.C. §2255 shall be filed on or before May 2, 2005.

**IT IS FURTHER ORDERED** that in the absence of a waiver from the Petitioner of the time periods prescribed in 28 U.S.C. §2266, no reply to the Government's response shall be allowed.

**IT IS FURTHER ORDERED** that the issue of the relation back of any amendment to the motion is hereby **DEFERRED** but the Petitioner is not precluded from filing amendments to the motion.

**IT IS FURTHER ORDERED** that the motion for discovery, the motion for leave to interview jurors and the motion for access to records of the Buncombe County Department of Social Services are each hereby **DENIED**.

18

**IT IS FURTHER ORDERED** that the request for an evidentiary hearing is hereby

**DENIED**.

**IT IS FURTHER ORDERED** that the motion for appointment of experts is hereby

**DENIED**.

**IT IS FURTHER ORDERED** that the request for a scheduling conference is hereby

**DENIED**.

**THIS** the 31st day of January 2005.

**LACY H. THORNBURG**
**UNITED STATES DISTRICT COURT JUDGE**

19

United States District Court
for the
Western District of North Carolina
February 1, 2005


* * MAILING CERTIFICATE OF CLERK * *


Re:   1:00-cr-00074


True and correct copies of the attached were mailed by the clerk to the following:


     M. Gordon Widenhouse Jr., Esq.
     Rudolf, Widenhouse & Fialko
     312 West Franklin Street
     Chapel Hill, NC  27516


cc:
Judge                          (✓)
Magistrate Judge               ( )
U.S. Marshal                   ( )
Probation                      ( )
U.S. Attorney                  (✓)
Atty. for Deft.                ( )
Defendant                      ( )
Warden                         ( )
Bureau of Prisons              ( )
Court Reporter                 ( )
Courtroom Deputy               ( )
Orig-Security                  ( )
Bankruptcy Clerk's Ofc.        ( )
Other_____           ( )


                                               Frank G. Johns, Clerk

Date:___2-1-05___              By:_____
                                     Deputy Clerk